UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERNEST MOORE,

Case No. 07-10442

                    Plaintiff,

Bernard A. Friedman
United States District Judge

vs.

Michael Hluchaniuk
United States Magistrate Judge

Lt. HOWARD TANNER,
DR. MICHAEL BURGESS, D.O.,
and LPN CHRIS WILLIS

                    Defendants.
_____/

# REPORT AND RECOMMENDATION
## ON DEFENDANTS' MOTIONS TO DISMISS/SUMMARY JUDGMENT

## I.    PROCEDURAL HISTORY

The present complaint was filed by plaintiff Ernest Moore, a prisoner in the

custody of the State of Michigan, on January 29, 2007.  (Dkt. 1).  Plaintiff filed an

amended complaint on November 19, 2007, which is now at issue.  (Dkt. 54).  In

the amended complaint, plaintiff seeks injunctive relief and monetary damages

against Jackson County Jail,[1] two Jackson County Jail employees (Lt. Howard

_____

[1] On December 27, 2007, Magistrate Judge Steven D. Pepe entered an order
striking defendant Jackson County Jail from plaintiff's amended complaint.  (Dkt.
65).  Magistrate Judge Pepe also entered an order to show cause.  *Id*.  Plaintiff
responded by filing a "Motion for submission of witness list and affidavit into
                                                        (continued...)

Tanner and Sherif Daniel Heyns[2]), and two contracted medical employees (Dr. Burgess and LPN Chris Willis) in both their official and individual capacities based on allegations that he was denied certain rights under the United States Constitution in conjunction with 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, (ADA), and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, (RA).[3]

Plaintiff sought to proceed under the provisions of 28 U.S.C. § 1915(a), which allows a party with pauper status to file a complaint without payment of customary court fees. (Dkt. 4). He was granted the ability to proceed *in forma pauperis* by order dated February 2, 2007. (Dkt. 5). On February 22, 2007,

---

(...continued)

evidence." (Dkt. 71). In addition, plaintiff is no longer housed in Jackson County Jail and as such his claim for injunctive relief is moot. "An inmate's claim for injunctive relief regarding the conditions of his confinement becomes moot due to release from confinement, or transfer to another facility." *Butler v. Samuels*, 2005 WL 3440483, at *4 (E.D. KY 2005).

[2] On December 27, 2007, Magistrate Judge Pepe granted defendant Jackson County's motion to strike Sheriff Daniel Heyns from plaintiff's amended complaint. (Dkt. 65). Further, Magistrate Judge Pepe issued an order on February 13, 2008, dismissing all claims against Sheriff Heyns. (Dkt. 79).

[3] Plaintiff requests punitive damages under all claims (pursuant to § 1983, the ADA, and RA). Punitive damages are not available in private suits under the RA, or the ADA. *Center v. City of W. Carrollton*, 227 F.Supp.2d 863, 871 (S.D. Ohio 2002). Punitive damages are not available under 42 U.S.C. § 1983 from a municipality. *Id.* at 872. Plaintiff may only seek punitive damages from defendants in their individual capacities under § 1983. *Id.*

pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Bernard A. Friedman referred this matter to Magistrate Judge Pepe for all pretrial

purposes. (Dkt. 9). On January 14, 2008, this matter was reassigned from

Magistrate Judge Pepe to the undersigned. (Dkt. 69).

Counsel appeared on behalf of defendants Burgess and Willis on January

17, 2008 and filed a motion for partial summary judgment, in which co-defendant

Tanner joined on January 18, 2008, requesting dismissal of plaintiff's claims

under the ADA and RA. Plaintiff filed a response on February 4, 2008. (Dkt. 72,

74, 77). In addition, defendants Burgess and Willis filed a second motion for

partial summary judgment on February 13, 2008, on plaintiff's claim of deliberate

indifference, arguing that: (1) plaintiff's claim amounts to nothing more than a

difference of opinion concerning medical judgment, which does not constitute

deliberate indifference; and (2) plaintiff failed to establish the subjective element

of his deliberate indifference claim under the Eighth Amendment. (Dkt. 78).

Plaintiff filed a response to defendants' motion for partial summary judgment on

the deliberate indifference claims on March 14, 2008. (Dkt. 81). Counsel for

defendant Tanner appeared on March 27, 2008, and filed a motion to dismiss, and

in the alternative, a motion for summary judgment, arguing that plaintiff's claim

against him in his official capacity should be dismissed because access to medical

treatment was provided, and that plaintiff's deliberate indifference claim against him in his individual capacity should be dismissed because he is protected by qualified immunity.[4] (Dkt. 82). An order was issued on April 3, 2008, requiring plaintiff to respond to defendant Tanner's motions to dismiss and for summary judgment by April 28, 2008. (Dkt. 83). Plaintiff failed to respond.

It appears that defendants' dispositive motions on the ADA/RA claims and deliberate indifference claims can be decided without further information or arguments from the parties and, **IT IS RECOMMENDED** that their motions for partial summary judgment be **GRANTED** for the reasons set forth below and that this matter be **DISMISSED** with prejudice.

## II. STATEMENT OF FACTS

### A. Plaintiff's Claims

Before entering the Jackson County Jail system, plaintiff had shoulder surgery on September 15, 2005 at the University of Michigan Hospital for a stab wound, which he alleges required follow-up treatment and therapy between March and April of 2006. (Dkt. 54, p. 10; Dkt. 72, p. 13). Plaintiff claims that he never

---

[4] "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is treated as one for summary judgment if 'matters outside the pleading are presented to an not excluded by the court.'" *Abbot v. Michigan*, 474 F.3d 324, 332 n. 8 (6th Cir. 2007).

received treatment within the appropriate time period and, as a result, has been denied reasonable accommodation for his physical disability during his incarceration at the Chanter Road County Jail ("Jail") by defendant Tanner. (Dkt. 54, pp. 4, 10). Plaintiff further alleges that defendant Tanner cancelled his medical appointments and that, as a result of his denial of medical attention, he has suffered "unconscionable pain." (Dkt. 54, pp. 3-4). He alleges that defendant Tanner had a duty to provide him with adequate medical care under the ADA and RA and that defendant Tanner was deliberately indifferent to his medical needs. *Id*.

Plaintiff further alleges that he made several requests for medical attention through "medical kites" (informal written complaints or requests submitted by an inmate). (Dkt. 2, p. 1; Dkt. 54, p. 10; Dkt. 82, Ex. 4). He claims that defendant Burgess informed defendant Willis to cancel all upcoming appointments at the University of Michigan because "the administration at Chanter Correctional Facility does not allow [an] inmate to go on outside appointments." (Dkt. 2, pp. 1-2). Plaintiff also claims that defendant Willis is responsible for investigating inmate grievances concerning medical conditions, which she failed to do. (Dkt. 54, p. 3). Plaintiff claims that both defendants acted with deliberate indifference and violated the ADA and RA. (Dkt. 54).

B.	Motion for Partial Summary Judgment on ADA and RA claims

1.	Defendants Burgess and Willis

Defendants Burgess and Willis claim that they are entitled to partial summary judgment because plaintiff may not maintain an action under the ADA or the RA against them because neither the ADA nor the RA imposes liability on individuals, but rather, only an "entity" may be liable.  (Dkt. 72, pp. 14-15).  Defendants assert that they are not "entities" as defined under 42 U.S.C. § 12132(1) of the ADA and, as such, cannot be sued in their individual capacity.  (Dkt. 72, pp. 15-16).  Therefore, according to defendants Burgess and Willis, plaintiff may not maintain an action against them under the ADA or RA.

2.	Defendant Tanner

Defendant Tanner asserts that plaintiff failed to establish a prima facie case under the ADA and RA.  A prima facie case requires plaintiff to establish that: (1) he has a disability; (2) he is otherwise qualified, and (3) he is being excluded from participation in, being denied benefits of, or being subjected to discrimination under the program solely because of his disability.  (Dkt. 74, pp. 7-8).  Defendant Tanner suggests that plaintiff cannot establish that he is a "qualified individual with a disability."  (Dkt. 74, p. 2).  He points out that "[t]he determination of whether an individual has a disability is not necessarily based on the name or

diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." *Id*., citing, 29 C.F.R. pt. 1630, App. § 1630.2(j) (2001). Defendant Tanner contends that plaintiff has not offered any evidence demonstrating that he was prevented or severely restricted from performing activities of central importance in his life. (Dkt. 74, p. 3).

Defendant Tanner also argues that, even if plaintiff has a disability, his claims must fail because plaintiff cannot establish that "he was 'otherwise qualified,' or that he was subjected to discrimination, excluded or denied the benefits of services, programs or activities solely on the basis of his alleged disability." (Dkt. 74, p. 4). Tanner argues that plaintiff's claim that he was denied medical treatment is unsupported by evidence in the record. (Dkt. 74, p. 10).

### 3. Plaintiff's Response

In his response, plaintiff asserts that jail officials who have been alerted to a prisoner's serious medical needs must offer medical care to such a prisoner. (Dkt. 77, p. 1, citing, *Smith v. Ross*, 482 F.2d 33, 36 (6th Cir. 1973)). Plaintiff points to the medical kites as evidence that he informed all defendants of his serious medical need and that each defendant was in violation of the ADA and RA when they refused to grant his requests. (Dkt. 77, p. 1; Ex. B). Plaintiff points to a statement of unknown origin that, "since his appointment would only be a month

away" as evidence suggesting that all defendants knew of his serious medical needs and disregarded an excessive risk to his health or safety through delay. (Dkt. 77, p. 3). Plaintiff asserts that this evidence, viewed in light most favorable to him, is sufficient to deny defendants' Motions for Partial Summary Judgment.

C.    Motion for Partial Summary Judgment - Deliberate Indifference

1.    Defendants Burgess and Willis

Defendants Burgess and Willis claim that they are entitled to partial summary judgment because "[p]laintiff has failed to satisfy the two elements of a deliberate indifference claim - one objective (a serious medical condition), and one subjective (deliberate indifference to the condition, with knowledge of harm to the plaintiff)." (Dkt. 78, p. 15). Defendants contend that "plaintiff does not, and cannot, demonstrate that his alleged follow-up visit constituted a serious medical need . . . [a]nd he fails show that the instant defendants, allegedly being aware of that need, acted with deliberate indifference to it." *Id*.

In support, defendants offer an affidavit from plaintiff's neurosurgeon, Dr. Yang, who states that she did not view the six month follow-up as a serious medical need and that no plans were made for plaintiff to undergo additional surgery or procedures. (Dkt. 78, Ex. B). Furthermore, Dr. Yang states that "she cannot determine if plaintiff scheduled, or had, a return appointment with her

service." (Dkt. 78, p. 15; Ex. B).

Burgess and Willis also attest that plaintiff did not, in the exercise of their judgment, exhibit signs of a serious medical need. (Dkt. 78, p. 15; Ex. C; Ex. D). Specifically, Dr. Burgess made a medical judgment that plaintiff could wait one month for a follow-up, at which time, he would be in the custody of the Michigan Department of Corrections (MDOC). (Dkt. 78, pp. 19-20; Ex. C). Defendants Burgess and Willis assert that "at all times, plaintiff was appropriately treated based on objective medical criteria, observations and professional medical judgment." (Dkt. 78, p. 20).

> 2. Defendant Tanner's Motion to Dismiss and in the Alternative, Motion for Partial Summary Judgment

Defendant Tanner asserts that there is no genuine issue of material fact regarding the adequacy of the policies and procedures of the Jackson County Sheriff's Department or that the policy was violated under the standards of the Eighth Amendment. (Dkt. 82, p. 14). Tanner argues that, in the delivery of health care in a jail setting, and in accordance with regulations promulgated by the MDOC, R. 791.728, matters of medical judgment are "the sole province of the responsible physician." (Dkt. 82, p. 11; Ex. 2, J-02). Consequently, in matters that are beyond their training and expertise, corrections officers properly rely on

the judgments of medical professionals, which are often carried out through orders from the medical staff.  (Dkt. 82, p. 11; Ex. 2, J-37).

Defendant Tanner explains that, while he may be aware that an inmate is under the care of the medical staff, he would not be privy to the details of an inmate's medical treatment.  (Dkt. 82, p. 12).  Thus, defendant Tanner asserts that, even if plaintiff has satisfied the objective prong of a deliberate indifference claim (a serious medical need), he failed to satisfy the subjective prong, which requires a defendant to be aware that a substantial risk of serious harm exists.  (Dkt. 82, p. 22, citing, *Farmer v. Brennan*, 511 U.S. 825 (1994)).  Defendant Tanner argues that plaintiff's medical requests were forwarded to the medical staff in accordance with Jail Policy J-34, and that he was unaware of plaintiff's medical condition. (Dkt. 82, p. 23; Ex. 2, Standards Manual, J-34).  Finally, defendant Tanner asserts that plaintiff's claim of deliberate indifference should be dismissed based on qualified immunity pursuant to *Saucier v. Katz*, 533 U.S. 194 (2001).  (Dkt. 82, p. 24).

3. Plaintiff's Response[5]

Plaintiff claims that defendant Burgess deliberately ignored the medical recommendation of Dr. Socher, plaintiff's doctor at Foote Hospital.[6] (Dkt. 81, p. 4). Plaintiff claims that Dr. Socher's recommendation that he "[f]ollow up with Center for Family Health, as needed," is evidence that he has stated a claim for deliberate indifference. (Dkt. 77, Ex. A). Furthermore, plaintiff claims that it is a question of fact for a jury to decide whether defendants Burgess and Willis had a requisite knowledge of a substantial risk, and thus, the defendants' motion should be denied. (Dkt. 77, p. 14, citing, *Estelle v. Gamble*, 429 U.S. 97 (1976)).

## III. ANALYSIS

### A. Standard of Review

#### 1. Summary Judgment

Summary judgment is proper where no genuine issue of material fact exists

---

[5] Plaintiff failed to respond to defendant Tanner's dispositive motion. Under Rule 56(e) Fed.R.Civ.P., "[i]f the opposing party does not so respond [to a motion for summary judgment], summary judgment should, if appropriate, be entered against that party."

[6] Plaintiff originally admitted himself into Foote Hospital for the stab wound he received in September 2005. (Dkt. 78, p. 16; Ex. G). He was told that Foote Hospital did not have the equipment to treat him and he was later transferred to the University of Michigan where Dr. Yang performed his surgery and became responsible for his treatment. (Dkt. 78, Ex. B, p. 2, ¶ 3).

and the moving party is entitled to judgment as a mater of law.  Fed.R.Civ.P. 56(c).  In considering a motion for summary judgment, the evidence and all reasonable inferences must be construed in favor of the nonmoving party.  *Tanner v. County of Lenawee*, 452 F.3d 472, 477 (6th Cir. 2006).  Moreover, when a motion for summary judgment is filed, the adverse party may not merely rely on "the mere allegations" or denials of the adverse party's pleading, but . . . by affidavits or as the otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."  Fed.R.Civ.P. 56(e).

B.    Plaintiff's ADA and RA Claims

As a preliminary matter, only public entities may be sued under the ADA and RA.  The term "public entity" is defined, in relevant part, under the ADA § 12131,  "Definitions," as "any State or local government," or  "any department, agency, special purpose district, or other instrumentality of a State or States or local government."  The ADA and RA prohibit public entities and those who receive federal funding, respectively, from discriminating on the basis of an individual's disability in the provision of services, programs, or activities of a public entity:  "No qualified individual with a disability shall, by reason of such

disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a **public entity**, or be subjected to discrimination by any such entities." 42 U.S.C. § 12132 (emphasis added).[7]  Thus, the question is whether any defendant falls into the definition of an "entity" under the ADA or RA.  The answer is dependent on whether a suit is brought against them in their individual or official capacities.  Plaintiff's complaint purports to do both.

It is well-established that public employees may not be sued in their individual capacity under the ADA and RA.  *Williams v. McLemore*, 247 Fed.Appx. 1 (6th Cir. 2007); *see also*, *Sullivan v. River Valley Sch. Dist.*, 197 F.3d

_____

[7]  Similarly, § 504 of the RA provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).  "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act...claims brought under both statutes may be analyzed together."  *Thompson v. Williamson County*, 219 F.3d 555, 557, n. 3 (6th Cir. 2000) (citing *Maddox v. University of Tenn.*, 62 F.3d 843, 846, n. 2 (6th Cir. 1995)).

804, 808, n. 1 (6th Cir. 1999) (holding that the ADA does not permit public

employees or supervisors to be sued in their individual capacity).  Thus, plaintiff's

claims under the ADA and RA against all defendants in their individual capacity

fail as a matter of law.

An ADA and RA suit may be brought against a public entity by naming the

entity itself or by suing an agent of an entity in his official capacity.[8]

Official-capacity suits "generally represent only another way of pleading an action

against an entity of which an officer is an agent."[9]  *Monell v. New York City Dept.*

*of Social Services*, 436 U.S. 658, 690, n. 55 (1978).  It is undisputed that state

prisons fall within the statutory definition of "public entity," and may be liable

under the ADA and RA for denying prisoners the benefits of their programs,

services or activities.  *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206

(1998).  Here, unless defendants are agents of the Jail, a claim against them in

---

[8]  In this case, Judge Pepe dismissed the Jail because after plaintiff filed his amended complaint it was clear plaintiff meant to proceed against defendant Tanner and not the Jail.  (Dkt. 65).  Thus, any ADA/RA suit could only be pending against the agents of the Jail in their official capacity.

[9]  As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity.  *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).

their official capacities cannot succeed under the ADA or RA.[10]

Defendants Burgess and Willis do not satisfy the agency requirement because they attest that they contracted with the Jail to provide medical services and are not employees of the Jail. (Dkt. 78, Ex. C; Ex. D). According to their contract with the Jail, they work "as [ ] independent contractor[s], to provide medical and other services" to the Jail. (Dkt. 82, Ex. 1, p. 4, § 2.01). *See, Cuco v. Fed. Med. Center-Lexington*, 2006 WL 1635668 (E.D. Ky. 2006), aff'd, *Cuco v. Fed. Med. Ctr., Lexington*, 257 Fed. Appx. 897 (6th Cir. 2007) (holding that the ADA applies only to state entities and not to independent contractors who act under color of state law). Plaintiff does not dispute that defendants Burgess and Willis work as independent contractors at the Jail. The Court concludes that defendants Burgess and Willis are independent contractors and, for the purpose of the ADA/RA, are not agents of the Jail. Therefore, a claim against them in any "official" capacity under the ADA and RA fails. *See, Cuco*, 257 Fed.Appx. 897.

Defendant Tanner does not dispute that he is an agent of the Jail for the purposes of the ADA/RA. Therefore, a suit under the ADA/RA may proceed against defendant Tanner in his official capacity.

---

[10] In their motion for partial summary judgment on plaintiff's ADA and RA claims, defendants Burgess and Willis failed to address plaintiff's claims against them in their official capacity.

### 1.    Prima Facie case - ADA and RA claims

Even though a suit may proceed against defendant Tanner in his official capacity, defendant Tanner also argues that plaintiff failed to establish any genuine issue of material fact on one or more elements of a prima facie case under the ADA and RA.  To establish a prima facie case under ADA/RA, a plaintiff must show that he or she: "(1) [is] disabled under the statute, (2) [is] 'otherwise qualified' for participation in the program, and (3) [is] being excluded from participation in, denied the benefits of, or subjected to discrimination under the program by reason of his or her disability." *S.S. v. E. Ky. Univ.*, — F.3d —, 2008 WL 2596660, at *6 (6th Cir. 2008), citing, *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 846 n. 2 (6th Cir. 1995)).  If any element is missing, then plaintiff's claim fails as a matter of law.  *Owens v. O'Dea*, 1998 WL 344063 (6th Cir. 1998); *Sandison v. Michigan High Sch. Athletic Ass'n. Inc.*, 64 F.3d 1026 (6th Cir. 1995).  The Court will address each element in turn.[11]

---

[11] On a motion for summary judgment under Title II of the ADA and RA, courts employ the McDonnell Douglas burden shifting test.  The burden is originally on the plaintiff to establish a prima facie case; if he or she does establish a prima facie case, then the burden shifts to the defendant to proffer evidence to rebut plaintiff's claims; finally, the plaintiff is allowed an opportunity to rebut the defendant's evidence.  *Turner v. City of Englewood*, 195 Fed.Appx. 346, 353-54 (6th Cir. 2008).  Here, the Court need not address the second and third steps because plaintiff has not established a prima facie case.

a. "Qualified individual" under the ADA and RA

A person is a "qualified individual" under the ADA and RA if he or she is qualified to receive the benefits of a public service, program, or activity. *Spencer v. Earley*, 2008 WL 2076429, at *5 (4th Cir. 2008) (citing, *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 497, 498 (4th Cir. 2005)). This Court will assume for purposes of this decision that plaintiff was a qualified individual because, as an inmate of the Jail, he was a recipient of the services provided to inmates of the Jail.

b. "Disability" defined under the ADA and RA

The term "disability" is defined to include "a physical or mental impairment that substantially limits one or more of the major life activities" of an individual. 42 U.S.C. § 12131(2). The implementing regulations, in turn, define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."[12] 29 C.F.R. § 1630.2(I)). The ADA requires those "claiming the Act's protection . . .

---

[12] In two companion decisions, the Supreme Court held that a court must look at an ADA plaintiff's impairment after corrective measures are taken (e.g., medication, eyeglasses, surgery) in order to determine whether such an impairment was substantially limiting to the plaintiff's major life activities. *See, Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555 (1999); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999).

to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial."

*Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1194 (10th Cir. 2007).

In his amended complaint, plaintiff has claimed that "as a result of the stab wound...[he] has a physical impairment to his left hand which is now useless, that substantially limits the major life activity." (Dkt. 54, p. 4). In response to defendant Tanner's motion for summary judgment, plaintiff has not submitted any evidence, affidavits, or medical records indicating that he has lost the use of his arm or that he has been restricted from engaging in any specific major life activity. (Dkt. 54). The medical records submitted by defendant Tanner, however, indicate that plaintiff merely suffered from a "weakness of [his] left arm." (Dkt. 78, Ex. F). In response to another motion, plaintiff submitted a post-surgery medical record indicating that he was able "to extend his fingers with some wrist flexion" and that he was able to perform other manual tasks. (Dkt. 81, p. 23).

Based on the foregoing, plaintiff has not demonstrated any restriction of a major life activity and his impairment does not substantially limit his daily activities. Plaintiff fails to establish any genuine issue of material fact on the first element of an ADA/RA claim, that he has an impairment that substantially limits a

major life activity. Thus, the undersigned suggests that the Court should grant defendant Tanner's motion for summary judgment on this basis.

> c. "Denial of benefits because of his disability" under the ADA and RA

Even if plaintiff established that he was disabled for purpose of the ADA/RA, he fails to allege, let alone demonstrate, that he was excluded from any programs or services offered by Jackson County Jail "by reason of such disability." A plaintiff "must allege either that they are or are perceived to be handicapped within the definitions of each of the acts ... and that they were discriminated against on the basis of their disability." *Andrews v. State of Ohio, 104 F.3d 803, 807 (6th Cir. 1997)*; *Henrietta D. v. Bloomberg, 331 F.3d 261, 277-79 (2d Cir. 2003)* (holding that plaintiffs under the ADA must show that their exclusion from benefits occurred "by reason of [such] disability" by demonstrating that disability was a "substantial cause" of the exclusion).

Plaintiff makes a vague assertion that he was treated "worse" than at least one other inmate. (Dkt. 54, p. 3). Plaintiff asserts that he was denied outside medical care by defendant Tanner, whereas another inmate was provided with such care. *Id*. He presents an affidavit of a fellow inmate, Tommie Simmons, who was transported to an outside medical facility. (Dkt. 77). However, the record

does not identify Mr. Simmons' medical condition at that time and it is unclear whether Mr. Simmons' appointment was scheduled before his incarceration. Also, plaintiff has neither alleged (nor proven) that his purported "worse" treatment was the result of his "disability." As such, plaintiff's bare claim that he was treated "worse" than other inmates fails to establish a genuine issue of material fact on the third element of an ADA/RA claim.

Even assuming that all facts alleged by plaintiff are true, plaintiff does not establish that he was denied any services offered by the Jail or that any acts or omissions about which he complains were caused by his alleged <u>disability</u>. Moreover, plaintiff makes no allegations or offers any evidence to support an inference of intentional discrimination. *See, Rashad v. Doughty*, 2001 WL 68708, at *1 (10th Cir. 2001) (the ADA proscribes intentional discrimination, not the denial of adequate medical care); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (the ADA "would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners;" the statute "does not create a remedy for medical malpractice"). Since plaintiff fails to establish any genuine issue of material fact as to the third element of an ADA/RA claim, defendant Tanner's motion for partial summary judgment should be granted on this basis.

C.     42 U.S.C. § 1983

_____To state a cause of action under § 1983, two essential elements are required: (1) there must be conduct committed by a person acting under color of state law, which (2) caused the deprivation of a federal right secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Jones v. Duncan*, 840 F.2d 359, 361-62 (6th Cir. 1988). If either element is missing, then a claim under § 1983 has not been stated. *Christy v. Bandlett*, 932 F.2d 502, 504 (6th Cir. 1991).

_____1.     Color of state law

"To determine whether an independent contractor such as a prison physician has acted under color of law for the purposes of § 1983 liability, a court will look to the medical provider's function within the state system rather than the precise details of his employment status." *Gary v. Modena*, 2006 WL 3741364, *4 11th Cir. 2006), citing, *West v. Atkins*, 487 U.S. 42, 55-56 (1988); *see also, Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993). "A prison physician who furnishes medical services to state prison inmates as part of his contractual duties to that state acts under color of state law for the purposes of § 1983." *Id*. (holding that a private physician under contract to the State of North Carolina was acting under color of state law when he treated an inmate's injury and that the state could be

Report and Recommendation
Defendants' Motions to Dismiss/Summary Judgment
*Moore v. Tanner*, No. 07-10442

held liable for his deliberate indifference).  Since defendants Burgess and Willis furnished medical services to the Jail's inmates under contract, they act under the color of state law for purposes of § 1983.  (Dkt. 78, Ex. C, Ex. D).  Officers "act under color of law when their actions [are] pursuant to some official duty or function of the" officer.  *Sanchez v. Crump*, 184 F.Supp.2d 649, 655 (E.D. Mich. 2002).  Defendant Tanner does not dispute that he acted under color of state law.

### 2. Deprivation of a federal right

The Supreme Court has concluded that a prison official's deliberate indifference towards a prisoner's serious medical needs is a deprivation of a federal right under § 1983.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976).  A claim made by a prisoner that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment as a claim of cruel and unusual punishment.  *Id*.  To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements:  the first is objective - he must show he had a serious medical need, and the second is subjective - he must show that defendants, being aware of that need, acted with deliberate indifference to it.  *Wilson v. Seiter*, 501 U.S. 294, 300 (1991); *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999).  As discussed below, defendants argue that plaintiff failed to satisfy

both the objective and subjective prong of his deliberate indifference claim.

        a.      Objective prong - a serious medical need

A medical need is sufficiently "serious" if the failure to treat a prisoner's condition could result in further significant injury or the "wanton infliction of unnecessary pain." *Gamble*, 429 U.S. at 105. The existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. *See, Wood v. Housewright*, 900 F.2d 1332, 1337-1341 (9th Cir. 1990); *Hunt v. Dental Dep't.*, 865 F.2d 198, 200-201 (9th Cir. 1989). Plaintiff alleges in a medical kite and in his complaint that he was in pain because he was refused a follow-up medical appointment regarding his previous surgery on his left arm. (Dkt. 54, p. 4; Dkt. 82, Ex. 5). However, defendants Burgess and Willis submitted an affidavit from Dr. Yang, plaintiff's surgeon, stating that she "did not view the follow-up visit as a serious surgical need." (Dkt. 82, Ex. B, ¶ 5). Defendants Burgess and Willis also offer their own affidavits in which they state that "plaintiff did not exhibit a medical need, serious or otherwise..." (Dkt. 82, Ex. C, ¶ 4; Ex. D. ¶ 4). They do not specifically address plaintiff's pain complaints.

Although plaintiff does not provide additional evidence beyond his amended complaint and medical kite, the Court concludes that a jury could find that plaintiff had a serious medical need when he has recently had surgery to repair

shoulder and nerve damage and was experiencing the symptoms plaintiff

describes.  *See*, *Gibson v. Moskowitz, 523 F.3d 657 (6th Cir. 2008); see also, Gil*

*v. Reed, 381 F.3d 649, 662 (7th Cir. 2004)* (in determining whether condition is

serious medical need "we need not check our common sense at the door").

Therefore, the Court concludes that plaintiff has established an issue of material

fact regarding whether he suffered from a "serious" medical need.

> b.    Subjective prong - actions of defendants

To survive a motion for summary judgment,[13] a plaintiff is required to show

that defendants were "aware of facts from which the inference can be drawn that a

substantial risk of serious harm exists, and he must also draw the inference."

*Farmer, 511 U.S. at 837* (discussing the subjective prong of a deliberate

indifference claim).   But if medical care is provided, there is no deliberate

indifference so long as such care meets "minimal standards of adequacy."  *Holmes*

*v. Sheahan, 930 F.2d 1196, 1199 (7th Cir. 1991) (quoting Benson v. Cady, 761*

*F.2d 335, 339 (7th Cir. 1985))*.  "Deliberate indifference is not mere negligence"

but "requires that the defendant[ ] knew of and disregarded a substantial risk of

---

[13] Defendant Burgess and Willis have filed a motion for partial summary judgment on plaintiff's deliberate indifference claims, but defendant Tanner has filed a Motion to Dismiss, and in the alternative, a motion for partial summary judgment.

harm to [a plaintiff's] health and safety." *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001).

                     (1).    Individual capacity

The individual liability of officials under § 1983 must be based on their own unconstitutional behavior. *Davis v. Fentress County Tenn.*, 6 Fed.Appx. 243 (6th Cir. 2001). To prevail against an official in his individual capacity under § 1983, plaintiff must prove that the official caused a deprivation of the plaintiff's federal constitutional rights or that he encouraged the specific incident of misconduct or in some other way directly participated in it. *Loggins v. Franklin County*, 218 Fed.Appx. 466, 470 (6th Cir. 2007). Generally, differences in medical opinion between a prisoner and the medical providers regarding the appropriate diagnosis or treatment is not enough to show deliberate indifference. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Gabehart v. Chapleau*, 1997 WL 160322 (6th Cir. 1997); *Ward v. Smith*, 1996 WL 627724 (6th Cir. 1996).

The medical records of the Jail show that plaintiff was provided with access to medications and adequate medical attention in accordance with the previous medical orders of Dr. Yang.[14] (Dkt. 78, Ex. I). Plaintiff sent a total of nine

_____

[14] Plaintiff misconceives the series of events before his incarceration in the Jackson County Jail. Plaintiff asserts that defendants Burgess and Willis

(continued...)

medical kites to the medical staff, which included the following requests and

statements:

> I have an appointment with a neurologist concerning the reattachment of the ligaments in my hand. I am not sure when the appointment is and any information would be appreciated. [2/05/2006]

> Six days without medic. I am sick of asking for pills. [2/20/2006]

> I am writing to let you know that when you get copies of my stabbing I would like copies. [3/13/2006]

> I need to see someone from life-ways, I'm having some problems. [3/13/2006]

> I need to speak with Linda from C.M.H. as soon as possible. I received paper work I need help with. [4/04/2006]

---

[14](...continued)
deliberately ignored the medical orders of Dr. Sochor, his emergency room doctor at Foote Hospital, which occurred before his surgery. (Dkt. 77, P. 8; Ex. A). Dr. Sochor prescribed follow-up care with the Center for Family Health as needed and suggested that plaintiff follow-up with the University of Michigan for the stab wound. (Dkt. 77, Ex. A). However, once plaintiff was transferred to the University of Michigan Hospital, Dr. Yang became his primary doctor and controlled the prescription of medical care. Thus, plaintiff's reliance on Dr. Sochor's medical orders (to the extent they were ever not "followed") is misplaced. _McCracken v. Jones_, 562 F.2d 22, 24 (10th Cir. 1977) (holding that even where a plaintiff's private physician recommends a course of treatment for the plaintiff's condition, a prison doctor's use of a different treatment regimen does not amount to deliberate indifference).

C.M.H.  I need to speak with them. [4/16/2006]

I would like to speak with C.M.H. [5/07/2006]

Left Arm/Need new brace.  Swelling occurring.
[5/11/2006]

I am in a lot of pain lately as you know... I was scheduled
for a second surgery but was denied by the nurse.
[5/10/2006]

(Dkt. 82, Ex. 4).  Defendant Willis responded to such requests as indicated by her

hand writing on the medical kites.  *Id.*  At no time does it appear that either

defendant ignored a serious medical concern of plaintiff.  Based on the evidence

along with plaintiff's subjective complaints, defendants Burgess and Willis made

"sound medical decisions" regarding the course of treatment and plan.  (Dkt. 78,

Ex. B; Ex. C; Ex. D; Ex. I).  Plaintiff merely makes conclusory, unsupported

allegations of denial of appropriate treatment.  The evidence does not suggest that

defendant Willis or Burgess ever ignored plaintiff's requests, rather, it suggests

that they responded in good faith to plaintiff's medical requests during his

incarceration.  (Dkt. 78, Ex. C; Ex. D; Dkt. 82, Ex.4).  Thus, the undersigned

recommends that summary judgment be granted in favor of defendants Burgess

and Willis on plaintiff's deliberate indifference claim.

Plaintiff has also not provided sufficient evidence to demonstrate that

defendant Tanner, in his individual capacity, acted with deliberate indifference.

Plaintiff alleges that defendant Tanner took another prisoner to an outside facility

for medical treatment while denying him the same benefit. (Dkt. 54, pp. 3-4). The

record does not show that defendant Tanner had any knowledge of plaintiff's

purported "serious medical needs." Plaintiff solely relies on one medical kite,

dated May 10, 2006, directed to defendant Tanner, as evidence that defendant

Tanner ignored a substantial risk because he told defendant Tanner:

> [I]m in a lot of pain lately. As you know[,] I am the
> victim of a stabbing incident[,] which has left my arm
> paralyzed. I was scheduled for a second surgery for the
> reattachment of the severed [tendons] but I was denied
> [ ] by the nurse. Now the brace that was designed for my
> arm need replacing and I'm afraid if I kite the nurse that
> I will again be denied. She feel[s] the county will have
> to pay but I am a veteran and the V.A. will provide
> coverage for the cost. The one I have is badly damaged.
> P.S. I would still like to speak with you.

(Dkt. 82, Ex. 5). Defendant Tanner responded to the kite on May 10, 2006,[15] by

explaining that the "medical staff knows nothing abut your brace," and "if it needs

to be replaced they will replace it." (Dkt. 82, Ex. 5). Defendant Tanner further

explained that the "doctor controls all medical decision in the Jail, not me" and

that the doctor told defendant Tanner that he had already explained to plaintiff

---

[15] Notably, plaintiff was transferred to the custody of the MDOC less than
one week later, on May 16, 2008. (Dkt. 78, Ex. C).

"about the surgery, so that's good enough for me."  *Id*.  Plaintiff claims defendant

Tanner knew of his "serious" condition because of this kite.  (Dkt. 54, pp. 3-4).

This kite was insufficient to put defendant Tanner on notice of any actual

"serious" medical need.  *See, Blackmore v. Kalamazoo County*, 390 F.3d 890, 897

(6th Cir. 2004) (holding that "[a] medical need is sufficiently serious if it...is so

obvious that even a lay person would easily recognize the necessity for a doctor's

attention.").  Plaintiff has not offered any evidence that a lay person would be able

to realize, by visible observation, that he needed medical attention or that he had a

serious medical need.[16]  As such, defendant Tanner would not have been aware

that plaintiff faced any potential risk of substantial harm and thus, plaintiff has not

satisfied the subjective prong of a deliberate indifference claim.  *Holmes v.*

*Sheahan*, 930 F.2d 1196, 1200 (7th Cir. 1991) (holding that when a plaintiff

tenders no evidence to suggest that defendants had personal knowledge of

plaintiff's condition, summary judgment is appropriate for defendants in their

individual capacities).

　　　　Finally, plaintiff has also asserted that the "cancellation" of his upcoming

---

[16] Although plaintiff claims that "swelling [is] occurring" in one of his medical kites, the kite was only addressed to defendants Burgess and Willis. (Dkt. 82, Ex. 4).  Even assuming, however unlikely that it may be, that swelling rises to the level of a serious medical need, plaintiff does not explain how defendant Tanner would have known that his arm was swelling.

appointment at the University of Michigan was an act of deliberate indifference. (Dkt. 54). Plaintiff claims that both defendants Burgess and Tanner individually cancelled his appointment. (Dkt. 2, p.1; Dkt. 54, pp. 3-4). Notably, Dr. Yang attested that it was "routine" to recommend a six-month follow-up, but that such an appointment was not critical to plaintiff's follow-up care. (Dkt. 78, Ex. B). Dr. Yang also stated that she "cannot determine if Mr. Moore scheduled the routine six-month follow-up visit." Id. Dr. Burgess attests that he relied on his medical judgment when he determined that plaintiff could wait one month for a follow-up appointment. (Dkt. 78, Ex. C). Even if defendant Burgess did cancel plaintiff's appointment, it would seemingly amount to nothing more than the exercise of medical judgment. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1999) (differences in medical opinion between a prisoner and the medical providers regarding the appropriate diagnosis or treatment is not enough to show deliberate indifference). With respect to defendant Tanner, plaintiff offers no evidence indicating that defendant Tanner cancelled any alleged appointment. Plaintiff actually states in his affidavit that the "scheduled appointment. . .[was] [ ] cancelled at the request of Dr. Burgess, who[ ] inform[ed] his assistant defendant Jane Doe to relay [the information] to me. . ." (Dkt. 2, ¶ 3). Defendant Tanner has also denied that he ordered the cancellation of plaintiff's outside medical

appointments. (Dkt. 82, Ex. 3, No. 4). In short, plaintiff has not demonstrated the existence of a genuine issue of material fact that defendants Burgess or Tanner acted with deliberate indifference by "cancelling" any alleged appointments.

Because the Court has determined that plaintiff has failed to demonstrate, in a manner sufficient to survive a motion for summary judgment, that any aspect of his medical treatment violated his rights under the Eighth Amendment by defendant Tanner in is individual capacity, it need not reach the second step in the analysis of the defendant's qualified immunity defense. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).[17]

(2)    Official capacity

A governmental entity is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation. *Polk County v. Dodson*, 454 U.S. 312,

---

[17] Defendant Tanner asserts that plaintiff's deliberate indifference claim against him in his individual capacity should be dismissed under the theory of qualified immunity. However, there is no need to analyze the question of qualified immunity where the plaintiff's allegations, even if established, indicate that plaintiff's constitutional rights were not violated. *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004); *Saucier*, 533 U.S. at 201 (stating that a court should only proceed with qualified immunity analysis to determine whether the constitutional right in question was "clearly established" if it first determines that a constitutional violation has occurred); *Cherrington v. Skeeter*, 344 F.3d 631, 636 (6th Cir. 2003) ("As a threshold matter, we must ask whether the record, viewed most favorably to the plaintiff, establishes that 'the officer's conduct violated a constitutional right.'").

326 (1981)) (quoting, *Monell*, 436 U.S. at 694). Thus, in an official-capacity suit, the entity's "policy or custom" must have played a part in the violation of federal law. *Oklahoma City v. Tuttle*, 471 U.S. 808, 817-818 (1985); *see also*, *Monell, 436 U.S. at 694* ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). "A court's first inquiry in any case alleging municipal liability under 42 U.S.C. § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989); Cunningham v. Reid, 337 F.Supp.2d 1064, 1075 (6th Cir. 2004).*

Plaintiff makes no claims and offers no evidence or argument that he was treated with deliberate indifference by defendants Burgess or Willis based on Jail policy or custom. Plaintiff merely alleges that defendants Burgess and Willis did not exercise their medical judgment appropriately. (Dkt. 54, pp. 3-4). The Supreme Court has held that difference in opinion between a prisoner and the medical staff about treatment does not state a cause of action. *Estelle v. Gamble,*

429 U.S. 97, 107 (1976). The Court is reluctant to second-guess medical judgments where a prisoner has received some medical attention and the dispute concerns the adequacy of that treatment. *Westlake v. Lucas*, 537 F.2d 857, 860, n. 5 (6th Cir. 1976). Thus, plaintiff's claim of deliberate indifference against defendants Burgess and Willis fails.

Defendant Tanner asserts that plaintiff's claims against him in his official capacity should be dismissed, or in the alternative, he should be granted summary judgment because a local governmental entity cannot be held liable under § 1983 on a *respondeat superior* theory. (Dkt. 82, p. 2, citing, *Monell, supra*). The United States Supreme Court has summarized its holding in *Monell* as follows:

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id*. at 694.

Plaintiff makes two claims concerning the Jail's policies. First, plaintiff has claimed that defendant Tanner's deference to the medical professional's judgment, which is articulated in the policy manual, has caused him injury. (Dkt. 82, Ex. 2). The jail records reflect that there was only one written request directed at

defendant Tanner during the entire term of plaintiff's detention. Specifically, on May 10, 2006, plaintiff complained to defendant Tanner about the nurse's alleged denial of a scheduled surgery for the reattachment of the severed tendons in his hand. (Dkt. 82, Ex. 5). Without first going to the medical staff, plaintiff also stated that the brace for his arm needed to be replaced because it was damaged. *Id*. After speaking with the medical staff, defendant Tanner responded that same day in accordance with Jail policy, stating:

> The Doctor controls all medical decisions in the Jail, not me. I cannot and will not override a medical decision made by the Jail Doctor. He told me he explained the situation to you about the surgery, so that's good enough for me.

*Id*. Defendant Tanner's deference to medical professionals' judgment, based on Jail policy, was within proper constitutional limitations. In *Ronayne v. Ficano*, 1999 WL 183479, at *3 (6th Cir. 1999), the court noted that it was not unconstitutional for municipalities and their employees "to rely on medical judgments made by medical professionals responsible for prisoner care." *See also, Clutters v. Sexton*, 2007 WL 3244437, at *10 (S.D. Ohio 2007); *Graham v. County of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004) (holding that an inmate's deliberate indifference claim fails against a jail officer because there was nothing in the county's policy which was actionable under section 1983.). Plaintiff has

failed to show that defendant Tanner deviated from the Jail's policy by relying on the judgment of medical personnel. Therefore, plaintiff fails to establish any genuine issue of material fact and summary judgment in favor of defendant Tanner is appropriate.

Second, plaintiff has claimed that the Jail's policies caused him harm because he was denied access to outside medical treatment when defendant Tanner followed the Jail policy. (Dkt. 54). Defendant Tanner has provided the Jackson County Sheriff Department's policy manual related to the care and treatment of inmates. As it relates to plaintiff's allegations, the transportation of inmates to outside appointments is expressly governed by Policy J-38, which provides:

> Inmates are transported safely and in a timely manner by security personnel for medical, mental health and dental appointments both inside and outside the jail maintaining security and confidentiality. Scheduled, but unmet clinic appointments are monitored by the Health Authority. Transports outside the jail are accompanied with a transport form with appointment information and medical report form for a written evaluation by the treating physician/dentist/mental health staff, etc.

(Dkt. 82, Ex. 2, Standards Manual, J-38). The Jail's policy, on its face, does not deny inmates transportation to outside medical appointments. As such, the Jail's policy was not the "moving force" behind plaintiff's claimed injury. Moreover, the "denial" of outside medical treatment was the result of a medical judgment and

plaintiff's disagreement with the medical professional's judgment is insufficient to establish a deprivation of a constitutional right. Third, plaintiff failed to establish that he ever had an appointment. Therefore, plaintiff fails to establish any genuine issue of material fact on this claim as well. *McDowell v. Brown*, 392 F.3d 1283, 1296 (11th Cir. 2004) (in an official capacity suit under § 1983, where an inmates deliberate indifference claim turned on medical judgment and not jail policy, there was no issue of material fact and summary judgment was granted in favor of the municipality); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 386-87 (1989) (policy requiring jailers to take inmates needing medical care to a hospital for treatment is constitutional on its face).

## IV.    RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that defendants motions for partial summary judgment be **GRANTED** and that plaintiff's claims be **DISMISSED** with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service of a copy hereof, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health*

*and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Within 10 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not exceed 20 pages in length unless such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections by motion order. If the Court determines objections are without merit, it may rule without awaiting the response to the objections.

Date: August 4, 2008                    s/Michael Hluchaniuk
                                        Michael Hluchaniuk
                                        United States Magistrate Judge

# CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: Edward Jason Blankenship, Jason D. Kolkema, Clyde M. Metzger, and Judith A. Sherman, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Ernest Moore, #177514, Parnall Correctional Facility, 1780 E. Parnall, Jackson, MI 49201.

s/James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7850
pete_peltier@mied.uscourts.gov

Report and Recommendation
Defendants' Motions to Dismiss/Summary Judgment
*Moore v. Tanner*, No. 07-10442